YATES, Judge.
This case involves the denial of a petition for a writ of mandamus directing the Board of Managers to grant an application for extraordinary disability benefits pursuant to 1973 Alabama Acts, No. 1272 (Act 1272).
Durden R. Creel began working for the Birmingham Fire and Rescue Service (City) in 1986. It is undisputed that on August 31, 1990, he injured his back while on duty as a line firefighter. Creel was examined that afternoon in the emergency room of Health-South. He was advised to confine himself to bed rest and to take prescribed medication for a few days, and to then report to Dr. Rosemore, a health provider retained by the City.
Creel did as instructed, and reported to Dr. Rosemore. Rosemore advised him to continue taking his medication, to take an additional day off from work, and to then return to work. The next day after returning to work, Creel experienced severe pain when rousing from bed to respond to an emergency call. He was treated at Health-South, and was given the same instructions as for his initial injury. Dr. Rosemore, at Creel’s follow-up examination, prescribed a physical therapy program. Creel participated in therapy and, after ten days, returned to work, only to again repeatedly suffer a similar chain of events of reinjury and constant pain over the next 10-month period. Creel cooperated fully with the City’s physicians, returning to work each time they opined he was ready, up and until June 1991, when he sought the opinion of an independent physician, Dr. Stuart Stephenson.
The record reveals that on July 16, 1991, Creel applied for extraordinary disability benefits, pursuant to Act 1272. The Board of Managers of the City of Birmingham Retirement and Relief System (Board) denied Creel’s application on August 14, 1991. Creel then petitioned the trial court for a writ of mandamus directing the Board to grant his application. A hearing on the matter was held, and the testimony of Creel and Dr. Gregory Miller, a physician retained by the City, was heard. Additionally, the deposition of Dr. Stephenson, Creel’s physician, was submitted and read into evidence. On September 15, 1992, the trial court entered an order sustaining the Board’s denial of Creel’s application; hence, this appeal.
This court has previously stated that:
“The Act specifies that review of the Board’s decision may be solely upon the evidence presented to the Board, or the circuit court may receive and consider additional evidence. The Act further designates that after consideration of the evidence, the standard applied by the circuit court is whether the Board’s decision is manifestly wrong. Art. Ill, § 11.
“The ‘manifestly wrong’ standard of review is a lesser burden than in a certiorari proceeding. ‘Even if there is sufficient evidence supporting the decision of the board, such a decision could still be manifestly wrong in light of the additional evidence presented to the trial court.’ Brewer v. City of Birmingham Retirement & *827 Relief System Board of Managers, 585 So.2d 46, 48 (Ala.Civ.App.1990).”
Large v. Board of Managers of the City of Birmingham Retirement & Relief System, 628 So.2d 1174 (Ala.Civ.App.1993).
We note that Act 1272 originated for the purpose of “promoting efficiency of employees in the service by partially relieving their minds of harassing fear of the consequences of loss of employment through disabili-ty_” Article I, § 3.
The record reveals that Creel performed an exemplary job as firefighter, receiving the “Fireman Of The Year” award in 1990 for his rescue of an elderly woman from a burning structure. As a qualified employee under Act 1272, Creel had a reasonable expectation, while risking life and limb, that, should he suffer a disabling injury while on duty, and by meeting other requirements of Act 1272, he could rely on receiving disability benefits as follows:
“In the event a Participant shall become totally disabled to perform his customary duties by reason of personal injury received as a result of an accident arising out of and in the course of the employment in the Service and occurring at a definite time and place, then in the event such total disability shall continue until the Participant ceases to draw salary as an employee of the City such disabled Participant shall be entitled to a monthly allowance from the Fund equal to seventy per cent (70%) of his monthly salary at the time of the accident which resulted in such total disability.”
Article VI, § 8 (emphasis added).
Clearly, Creel has met the plain language “customary duties” requirement. The evidence overwhelmingly shows that Creel can no longer perform those duties which he, as a line firefighter, is required to perform. On two separate occasions, while attempting to perform the “Job Survey Task,” which every firefighter is required to satisfactorily complete on an annual basis, Creel suffered intense pain and was unable to accomplish a required task.
Creel testified that he wants to return to work, and the record clearly demonstrates that for 10 months after his initial injury, he made a good faith effort to return to work and to perform the customary duties of his job. According to the class specification for firefighter, those duties include the “[ajbility to perform strenuous work under adverse conditions for a sustained period of time including the ability to react quickly and calmly in emergency situations.”
Creel testified that routinely, as a firefighter, he had to do “whatever the situation required.” These duties included unloading the fire hose and then entering a burning structure when the hose was charged with water. Often he had to crawl because it was dark and he could not see. He pulled down ceilings with a ceiling hook and chopped down walls. He was required to lift victims into emergency vehicles. Creel described his job as being “extremely strenuous” and stated that it required “total exertion.” Creel went on to state, “If I could do the job, I would go back today.”
“In order for disability allowances to be awarded under ... Section 8 of the Article VI, the Board must first have satisfactory proof thereof by certification of such disability of the Participant applying for disability allowance, said certification being made by a licensed and practicing physician or surgeon....”
Article VT, § 9.
The record contains Dr. Stephenson’s “PHYSICIANS STATEMENT OF DISABILITY,” dated August 5, 1991, which states that Creel “will be disabled completely and indefinitely from performing the customary duties of a firefighter.” This statement was written prior to the Board’s determination denying Creel disability benefits.
Creel was seen by a number of physicians who performed numerous examinations and tests. Tests revealed a bulging disc at the L4-L5 area of his lumbar spine and some mild relative stenosis in the lumbar-spine area. Although Dr. Miller, who was the City’s physician, testified that he could not explain or account for Creel’s intense pain while attempting certain activities, he acknowledged that Creel did suffer chronic and acute pain, and he opined that there was no surgical treatment or therapy to combat it.
*828 Dr. Miller further testified that Creel should “learn to live ■with” the pain, that a complaint of pain itself does not mean Creel is physically unable to perform physical activity, and that, in his opinion, Creel could return to full-duty as a firefighter. Yet, Dr. Miller agreed that it is impossible to say that Creel will not continue to have pain, and that if the only time Creel has pain is during activity, and he wishes not to have that pain, he should modify his activity. “I would have to state, the only way to avoid the pain is by activity modification — avoid strenuous activity if that’s what Creel says causes pain.”
At trial, Creel’s attorney asked Dr. Miller for his opinion as to whether a firefighter suffering from significant pain while engaging in the duties of his job, is able to efficiently and safely discharge the duties of a firefighter. Dr. Miller testified, “I think that would be up to that individual to make that determination.” Further testimony of Dr. Miller revealed the following:
“Q. If Mr. Creel says he feels that pain, you don’t have any basis to dispute that, do you?
“A. You are correct, sir.”
It appears from the record that Creel has made every effort to improve his condition. Testimony revealed that he no longer receives physical therapy from a professional because he cannot financially afford it; however, he took it upon himself to go to the therapist and learn what exercises he could do on his own to try to improve his condition. He testified at trial that he does these exercises and walks every day. Creel further testified that, prior to injury, he ran four to five days each week, on an average of 5 miles per day. Now he cannot run at all.
Based on the foregoing, this court is of the opinion that the trial court, after considering all of the evidence, should have found that the Board’s decision was manifestly wrong. Accordingly, the judgment of the trial court is reversed and the cause is remanded with instructions to enter an order consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and THIGPEN, J., concur.